UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REYA AREY,

Plaintiff,

v.

NORTH SEATTLE COMMUNITY COLLEGE,

Defendant.

CASE NO. 2:24-cv-00302-LK

ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL AND TO SEAL; GRANTING IN PART DEFENDANT'S MOTION TO COMPEL

This matter comes before the Court on pro se Plaintiff Reya Arey's motions to compel and to seal, Dkt. Nos. 23, 27, 30, and Defendant North Seattle Community College's motion to compel Ms. Arey's deposition and a psychological evaluation, Dkt. No. 24. For the reasons set forth below, the Court denies Ms. Arey's motions and grants Defendant's motion in part.

## I. BACKGROUND

Ms. Arey filed her complaint in this Court on March 5, 2024. Dkt. No. 1. After the Court issued an order to show cause why the complaint should not be dismissed for lack of subject matter jurisdiction, Dkt. No. 9, she filed a timely amended complaint, Dkt. No. 10. The amended

complaint asserts claims under Title VII of the Civil Rights Act of 1964 for discrimination and retaliation. *Id.* at 3. Specifically, Ms. Arey contends that she has "has been an employee in good standing at [North Seattle Community College ("NSCC")] for over two decades with an excellent track record of quality work" in her custodial job, but after she provided a statement in support of a coworker's retaliation claim, she herself was retaliated against. *Id.* at 2. She also alleges that she has experienced race and/or national origin discrimination as an "African whose national origin is Eritrean." *Id.*

## II. DISCUSSION

### A. The Court Denies Ms. Arey's Motions to Compel and Motion to Seal

Ms. Arey seeks to compel NSCC to produce a "report [of] investigations" conducted about third party Larry Graff. Dkt. No. 23 at 1; *see also* Dkt. No. 27 at 1 (amended motion to compel seeking the same relief). NSCC responds that the Court should deny the motions because Ms. Arey did not meet and confer with it prior to moving to compel, and the motions are moot because NSCC will provide the investigation report and its exhibits once it makes privacy-related redactions. Dkt. No. 26 at 2.

A motion to compel discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* LCR 37(a)(1) (elaborating on the meet-and-confer requirement). Neither of Ms. Arey's motions includes the required certification, *see generally* Dkt. Nos. 23, 27, so the Court denies both motions. In addition, because NSCC will soon produce the requested documents if it has not already done so, this motion may be moot.

The Court also reminds Ms. Arey that pro se litigants "are subject to the same procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022); *see,*

*e.g.*, *Chen v. King Cnty. Sheriff's Off.*, No. 2:21-cv-01492-LK, 2022 WL 17960617, at *12 (W.D. Wash. Dec. 27, 2022) (pro se litigants are expected to abide by the Local Civil Rules); *Howell v. Holland Am. Line USA Inc.*, No. C13-0730-JLR, 2014 WL 5325225, at *7 (W.D. Wash. Oct. 17, 2014) (pro se litigants must comply with the Federal Rules of Civil Procedure). This means that she must comply with the meet-and-confer requirement and all other applicable laws and Court rules.

The Court also denies Ms. Arey's motion to seal. Dkt. No. 30. In that motion she requests to seal or redact Exhibit A to the Declaration of Samuel Willette filed by NSCC, Dkt. No. 25 at 6–8, because it contains her date of birth, Dkt. No. 30 at 1, but this motion is moot because the Clerk has already administratively sealed that document, *see* September 26, 2025 Notice to Filer; *see also* Dkt. No. 32 at 6 (redacted version of Declaration of Samuel Willette subsequently filed by NSCC). The Court also reminds NSCC that it is responsible for complying with all Court rules to ensure that personal data identifiers are redacted and not included in the public docket. *See* LCR 5.2(a); Fed. R. Civ. P. 5.2(a).

**B. The Court Grants in Part Defendant's Motion to Compel**

NSCC seeks to "compel both Defendant's deposition of Ms. Arey and Defendant's examination of Ms. Arey by its chosen medical professional under terms the parties have not been able to agree to on their own." Dkt. No. 24 at 2. Ms. Arey opposes both requests. *See generally* Dkt. No. 28.[1] NSCC's attempts to confer with Ms. Arey satisfy the meet-and-confer requirement. Dkt. No. 24 at 4–5; Dkt. No. 32 at 1–2; *see also* Fed. R. Civ. P. 37(a)(1); LCR 37(a)(1).

[1] Ms. Arey has also filed a "Moti[o]n to Deny" NSCC's assertions regarding the parties' attempt to mediate, Dkt. No. 31, which appears to be a further response relating to the motion to compel, so the Court does not consider that filing as a standalone motion.

1. <u>The Court Grants the Motion Regarding Ms. Arey's Deposition</u>

The dispute here is not whether Ms. Arey will attend her deposition; she "has never objected to having her deposition taken." Dkt. No. 28 at 1. Rather, the parties dispute the type of interpreter she needs and if NSCC is able to provide the requested interpreter.

NSCC has agreed to provide an interpreter for Ms. Arey's deposition. Dkt. No. 24 at 3; Dkt. No. 32 at 26–31 (NSCC's attempts to arrange an interpreter). However, NSCC avers that it is unclear what language the interpreter needs to speak, and requests that the Court "clarify [Ms. Arey's] interpreter needs so Defendant can fulfill its right to take her deposition[.]" Dkt. No. 24 at 4. Ms. Arey states that her native language is Bilen, Dkt. No. 32 at 33, but she requests to have an interpreter who is fluent in Tigre, Dkt. No. 28 at 1.

NSCC has been unable to locate an interpreter who speaks Tigre or Bilen. Dkt. No. 32 at 26–31. A representative of the interpreter service wrote that "Tigre is considered a Language of Lesser Diffusion," which means that, like Bilen, "it's a language of few to no resources." *Id.* at 26, 28. The interpreter service does not have a Tigre interpreter on their roster, and they are not aware of a Tigre interpreter in the United States capable of covering a legal appointment. *Id.* at 26. That representative also stated that Tigre is "very similar to Tigrinya." *Id*. Ms. Arey objects to a Tigrinya interpreter because she is not fluent in that language, and it "is not similar enough to Tigre for someone to be examined in a deposition when they understand only Tigre." Dkt. No. 28 at 2. She also notes that NSCC provided her an interpreter in Tigre "for a work matter," *id.*, although NSCC responds that that "interpreter was not certified for legal proceedings and was meant to only address questions that may arise," Dkt. No. 33 at 2.

Ms. Arey cannot refuse to be deposed unless NSCC locates an interpreter. The Court has been unable to locate any authority requiring a defendant to provide an interpreter for a plaintiff who chose to file an action in federal court, where she is obligated to litigate her case in English.

*United States v. Rivera-Rosario*, 300 F.3d 1, 5 (1st Cir. 2002) ("It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English."); *see also Anderson v. State Bar of California*, 908 F.2d 976 (9th Cir. 1990) (because "[t]he present action was initiated by" the plaintiff, "the district court had no duty to inquire as to the need for an interpreter or to appoint one if needed"); *Sentin v. Szczepankiewicz*, No. 23-CV-108LJV(F), 2024 WL 4599971, at *2 (W.D.N.Y. Oct. 29, 2024) ("Plaintiff . . . is not entitled to assignment of a translator to assist her in her deposition in this case. . . . Accordingly, there is no basis for delaying Plaintiff's deposition on account of Plaintiff's alleged need for a Tagalog interpreter."); *Milinavicius v. Jackson*, No. 1:14-CV-62 (LJA), 2015 WL 13667160, at *1 (M.D. Ga. Apr. 9, 2015) ("[G]enerally, *pro se* civil litigants have no entitlement to an interpreter or translator." (citation modified)), *report and recommendation adopted,* 2015 WL 13667163 (M.D. Ga. July 20, 2015); *Nguyen v. Bartos*, No. 2:10-CV-1461 WBS KJN, 2011 WL 4443314, at *1 (E.D. Cal. Sept. 22, 2011) ("While plaintiff may have some difficulty with communicating in English, either verbally or in writing, he is obligated to litigate this action in English."); *Sayed v. Proffitt*, No. CIVA-09-CV-00869-MSK-KMT, 2010 WL 1687897, at *1 (D. Colo. Apr. 21, 2010) ("[Plaintiff] has been authorized to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Such authorization, however, does not excuse a litigant from paying costs associated with an interpreter."). Given that NSCC has expressed willingness to find a translator, the parties are free to engage an interpreter as follows:

1. If Ms. Arey believes that a qualified Tigre interpreter exists, she should identify that person to NSCC, and that person can serve as an interpreter if NSCC agrees that they have suitable credentials.
2. Conducting the deposition in Tigrinya also appears to be an option, although Ms. Arey does not state her level of proficiency with that language, and its proximity to Tigre is unclear on this record. *See* Dkt. No. 32 at 26 (according to the interpreter

service, Tigre is "very similar to Tigrinya"); *but see* Dkt. No. 29 at 4 (Wikipedia page noting that Tigrinya, like Tigre, "is also derived from the parent Ge'ez tongue, but is quite distinct from Tigre despite the similarity in name"); *see also id.* at 1 (Ms. Arey stating that she is "not fluent" in Tigrinya without specifying her level of proficiency); Dkt. No. 28 at 2 (same).

But again, Ms. Arey cannot compel NSCC to provide an interpreter to her. Therefore, if the parties cannot agree on an interpreter, NSCC may take Ms. Arey's deposition in English. The Court specifically notes that Ms. Arey's pro se filings—including her discovery responses and her filings related to this motion—show that she is able to communicate in English. Dkt. Nos. 28, 29, 31; Dkt. No. 34 at 11–13.

The parties must attempt to agree within five days of the date of this Order—either by talking to each other or emailing—but if they cannot agree, then NSCC may conduct the deposition in English. Ms. Arey is also reminded that Federal Rule of Civil Procedure 30(e)(1) allows her to request an opportunity "to review the transcript or recording" and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." This opportunity should reduce the chance of any errors due to language difficulties.[2]

Two issues remain. First, Ms. Arey asked NSCC to have an interpreter present "for any communications over the phone or in person" with NSCC's counsel. Dkt. No. 32 at 33. There is no legal basis to require NSCC to provide an interpreter for Ms. Arey. Accordingly, even if Ms. Arey had properly made that request in a motion, which she did not, the Court would deny it. Second, NSCC states that it has expressed concerns to Ms. Arey "about the involvement of a third

---

[2] The Court notes that because Rule 30(e) permits only "the deponent" to list changes to their deposition transcript by following the procedure in the rule, any changes to Ms. Arey's deposition transcript must be identified by Ms. Arey alone and not any third party.

party, Mr. Ibrahim Abdelkadir, in the litigation process." Dkt. No. 24 at 3 (citing Dkt. No. 32 at 10); *see also* Dkt. No. 34 at 11 (Ms. Arey identifying Mohamed Abdelkadir as her husband); Dkt. No. 32 at 10, 19 (Mr. Abdelkadir introducing himself as Ms. Arey's husband with the first names Ibrahim and Mohamed in separate phone calls). The Court cautions both Ms. Arey and Mr. Abdelkadir that nonlawyers may not practice law in Washington, and it will not permit a non-attorney to "run this case from the shadows[.]" *Lindberg v. Spencer*, No. C16-5671RBL, 2017 U.S. Dist. LEXIS 195335, at *3 (W.D. Wash. Nov. 28, 2017). If the Court learns that someone is engaging in the unauthorized practice of law, it may refer that person to the Washington State Bar Association or impose sanctions. *See, e.g.*, *Spicuzza v. Liss Fin. Servs.*, No. C06-1244-JLR, 2006 WL 3064947, at *1 (W.D. Wash. Oct. 26, 2006).

2. <u>The Court Denies the Request for an Independent Medical Examination</u>

NSCC also seeks to compel Ms. Arey to submit to an independent medical examination ("IME") because she has put her mental health at issue in this litigation "by claiming general damages of upwards of $200,000 for emotional distress." Dkt. No. 24 at 5; *see also* Dkt. No. 34 at 12 (Ms. Arey describing "significant emotional distress" and feeling "angry" about her experience at work). Ms. Arey opposes this request because she seeks only "garden variety" emotional distress damages. Dkt. No. 28 at 1. She avers that she "has not sought medical treatment for any condition that has resulted from" NSCC's alleged wrongful conduct, and she "is not alleging any diagnosable physical or psychological injury." *Id.* at 2.

Federal Rule of Civil Procedure 35(a) authorizes the Court to order a party to submit to a psychiatric or medical examination when (1) the "mental or physical condition . . . is in controversy" and (2) the moving party has shown "good cause." These requirements are not satisfied by "mere conclusory allegations of the pleadings" or "mere relevance to the case" but instead "require an affirmative showing by the movant that each condition as to which the

examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964).

Courts have held that a plaintiff does not place her mental condition in controversy—and therefore waive physician-patient privilege—merely by alleging "garden-variety" emotional distress. *Robertson v. Catholic Cmty. Servs. of W. Wash.*, No. C19-1618-RSM, 2020 WL 1819842, at *3 (W.D. Wash. Apr. 10, 2020). Garden variety claims include those that seek "emotional damages for humiliation, embarrassment, and anger[.]" *Id.* In contrast, a plaintiff alleges more than garden variety emotional distress—and therefore puts her mental health at issue—when she "alleges more complex distress, including any specific psychiatric injury or disorder, or unusually severe distress." *Id.* (citation modified). "Although courts typically do not consider garden-variety emotional distress damages to place one's mental condition in controversy," some "will order an IME if one or more of the following factors is present":

> (1) the complaint includes a claim for intentional or negligent infliction of emotional distress; (2) the plaintiff alleges a specific mental or psychiatric injury or disorder; (3) the plaintiff claims unusually severe emotional distress; (4) plaintiff offers expert testimony to support the claim of emotional distress; or (5) the plaintiff concedes that her mental condition is in controversy for purposes of Rule 35.

*Nguyen v. Wal-Mart Associates, Inc.*, No. 23-cv-03204-JSW, 2024 WL 4490628, at *2 (N.D. Cal. Oct. 15, 2024) (citation modified). None of these factors are present here. Ms. Arey does not bring claims for intentional or negligent infliction of emotional distress, and there is no indication that she intends to introduce expert testimony regarding her mental condition. Ms. Arey has not alleged that NSCC caused unusually severe distress or any specific psychiatric disorder, and her response specifically disclaims severe emotional distress. Dkt. No. 28 at 1–2, 4; Dkt. No. 29 at 1.

Ms. Arey claims $200,000 in damages, but the claim form on which she demanded that amount does not specify how that amount was calculated or attribute the amount solely to

emotional distress. Dkt. No. 32 at 8. Accordingly, NSCC is not entitled to an IME because Ms. Arey has not alleged more than garden variety emotional distress.

Finally, NSCC states that because it has been unable to depose Ms. Arey, there is no other way for it "to understand the extent and nature of Ms. Arey's claimed distress[.]" Dkt. No. 33 at 3. That argument is moot now that the Court has ordered Ms. Arey to participate in her deposition. If Ms. Arey testifies in her deposition in a manner that puts her mental health in controversy, NSCC may renew its motion for an IME.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Ms. Arey's motions to compel and seal, Dkt. Nos. 23, 27, 30, 31, and GRANTS IN PART Defendant's motion to compel, Dkt. No. 24. The Court also extends the discovery deadline to November 10, 2025 solely for the purpose of allowing NSCC to take Ms. Arey's deposition.

Dated this 3rd day of October, 2025.

Lauren King
United States District Judge